UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON P. N.,[1]<br><br>　　　　　Plaintiff,<br>　　v.<br><br>LELAND DUDEK, Acting[2]<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Defendant. | Case No. 2:24-CV-05009-AJR<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

Vernon P. N. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Social Security Disability Insurance Benefits ("DIB")

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Leland Dudek became the Acting Commissioner of Social Security on February 17, 2025. Leland Dudek is substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned U.S. Magistrate Judge. (Dkts. 6, 19.) For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 18, 2020. (Dkt. 7-6 at 6-12.) Plaintiff filed an application for DIB on September 30, 2020. (Id. at 2-5.) The Commissioner denied the DIB claim by initial determination on April 5, 2021. (Dkt. 7-5 at 6-11), and upon reconsideration on June 15, 2022. (Id. at 17-23.) Plaintiff filed a written request for a hearing on September 2, 2022. (Id. at 26-27.) On October 10, 2023, Administrative Law Judge Mark Yasutomi (the "ALJ") conducted a telephonic hearing[3] and subsequently published a partially favorable decision on November 14, 2023. (Dkt. 7-3 at 14-36.) Plaintiff requested review of the ALJ's decision by the Appeals Council on December 17, 2023. (Dkt. 7-5 at 88-91.) The Appeals Council denied Plaintiff's request for review on May 3, 2024. (Dkt. 7-3 at 2-6.) On that date, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(h). Plaintiff now seeks review of the ALJ's final decision.

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to

---

[3] Plaintiff was represented by an attorney at the hearing and agreed to conduct the proceeding telephonically. (Dkt. 7-3 at 40.)

2

last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. See Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. See id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's

residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.
## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to August 17, 2022, but became disabled on that date. (Dkt. 7-3 at 18-19.) The ALJ also concluded that the insured status requirements of the Social Security Act were met as of the date disability was established. (Id. at 19.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2020, the Plaintiff's alleged onset date. (Id. at 20.) At step two, the ALJ found that Plaintiff had the following severe impairments since August 6, 2020 (the alleged onset date of disability): degenerative joint disease of the bilateral knees and obesity. (Id.) However, at step two, the ALJ also found that Plaintiff had the following severe impairments on August 17, 2022 (the established onset date of disability): degenerative joint disease of the bilateral knees, obesity, and bilateral blepharospasm. (Id.) At step three, the ALJ determined that since August 6, 2020, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations. (Id. at 21-

4

24.)

The ALJ assessed Plaintiff's RFC and concluded that prior to August 17, 2022, the established date of disability, Plaintiff could perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: stand and/or walk for 4 hours in an 8-hour workday; stand for 50 minutes at a time, and then must sit for up to 10 minutes before returning to the standing position; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; have occasional exposure to working at unprotected heights; and occasionally walk on uneven terrain." (Id. at 24 (bold omitted).) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to August 17, 2022." (Id. at 25.)

However, the ALJ also concluded that since August 17, 2022, Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: stand and/or walk for 4 hours in an 8-hour workday; stand for 50 minutes at a time, and then must sit for up to 10 minutes before returning to the standing position; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; only occasional exposure to working at unprotected heights; occasionally walk on uneven terrain; would be off-task 20% of the workday." (Id. at 27.)

At step five, the ALJ determined that "[p]rior to August 17, 2022, considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Id. at 28.) However, "[b]eginning on August 17, 2022, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the

1 claimant can perform." (Id. at 29.)

2      Specifically, the ALJ found that Plaintiff could perform the representative
3 occupations of contract clerk (Dictionary of Occupational Titles ("DOT") #119.267-
4 018, 25,000 jobs in the national economy), procurement clerk (DOT #249.367-066,
5 51,000 jobs in the national economy), and data entry clerk (DOT #203.582-054,
6 41,000 jobs in the national economy). (Id. at 29.) Thus, the ALJ found that Plaintiff
7 was not disabled prior to August 17, 2022, but became disabled on that date and has
8 continued to be disabled through the date of the decision. (Id. at 30.)

9

## V.
## STANDARD OF REVIEW

12      Under 42 U.S.C. § 405(g), a district court may review the Commissioner's
13 decision to deny benefits. The court may set aside the Commissioner's decision
14 when the ALJ's findings are based on legal error or are not supported by substantial
15 evidence in the record as a whole. See Garrison v. Colvin, 759 F.3d 995 (9th Cir.
16 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.
17 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett,
18 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair
19 v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

20      "Substantial evidence is more than a scintilla, but less than a preponderance."
21 Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.
22 1997)). It is "relevant evidence which a reasonable person might accept as adequate
23 to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at
24 1279). To determine whether substantial evidence supports a finding, the court must
25 "consider the record as a whole, weighing both evidence that supports and evidence
26 that detracts from the [Commissioner's] conclusion." Auckland, 257 F.3d at 1035
27 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can
28 reasonably support either affirming or reversing that conclusion, the court may not

substitute its judgment for that of the Commissioner.  See Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.
## DISCUSSION

Plaintiff raises only one ground for relief—whether the ALJ properly evaluated the opinion of the consultative examiner, Morton Kamzan, M.D.  (Dkt. 12 at 7-13.)  For the reasons set for the below, the Court AFFIRMS the decision of the Commissioner.

### A.   **The ALJ Properly Rejected Certain Limitations Assessed By Dr. Kamzan.**

Plaintiff contends that the ALJ's RFC determination for the period between August 6, 2020 and August 17, 2022 is the product of legal error because the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Kamzan.  (Dkt. 12 at 7.)  Specifically, Plaintiff contends that the ALJ improperly rejected the limitation assessed by Dr. Kamzan that Plaintiff needed time to rest during blepharospasm episodes as not supported by Dr. Kamzan's examination.  (Id. at 8-9.)  According to Plaintiff, the ALJ's analysis fails to consider that Dr. Kamzan noted that Plaintiff was not experiencing an episode of blepharospasm at the time of examination and the fact that Dr. Kamzan was unable to reproduce an episode during an examination does not render the assessed limitation invalid.  (Id. at 9.)  By contrast, Defendant contends that the ALJ properly rejected Dr. Kamzan's limitation of needing time to rest during blepharospasm episodes by considering the factors of supportability and consistency.  (Dkt. 21 at 6-7.)

#### 1.   **Dr. Kamzan's Opinion.**

On May 6, 2022, Dr. Kamzan performed an internal medicine consultation of Plaintiff and diagnosed Plaintiff with "blepharospasm."  (Dkt. 7-13 at 187-194.)  Dr. Kamzan noted that Plaintiff stated he was diagnosed with blepharospasm in 2010.  (Id. at 188.)  Initially, Plaintiff's blepharospasm was treated with Botox injections

every 8 to 12 months, but this was later reduced to every three months for a period of six years.  (Id.)  Plaintiff told Dr. Kamzan that "during an episode of blepharospasm, [Plaintiff's] eyes may lock shut for a period lasting up to several hours." (Id.)  Dr. Kamzan formed an impression that Plaintiff suffered blepharospasm, based on the Plaintiff's medical history.  (Id. at 198.)

Dr. Kamzan observed "no evidence" of blepharospasm during his examination of Plaintiff.  (Id. at 190.)  Additionally, Dr. Kamzan was unable to induce an episode of blepharospasm during the examination "by tapping the [Plaintiff's] forehead."  (Id.)  However, in his functional assessment of Plaintiff, Dr. Kamzan addressed blepharospasm under "visual limitations."  (Id. at 194.)  Dr. Kamzan noted that "[i]f the [Plaintiff] experiences an episode of blepharospasm, [Plaintiff] must be permitted adequate time to rest until this resolves, as severe episodes of blepharospasm result in what is essentially a complete loss of vision." (Id.)

Dr. Kamzan assessed that Plaintiff could lift and carry 50 pounds and 25 pounds frequently.  (Id. at 193.)  In an eight-hour day, Plaintiff could walk and stand for four hours, but should be permitted to take 5 to 10 minute breaks every hour if his knees become painful.  (Id.)  Plaintiff could sit without limitations.  (Id.)  Also, Plaintiff could climb ramps/stairs occasionally.  (Id.)  Plaintiff could climb ladders, ropes and scaffolds occasionally.  (Id.)  Plaintiff could stoop (bend forward) and crouch (squat) occasionally.  (Id.)  Plaintiff could kneel and crawl frequently.  (Id.)  Finally, Plaintiff could reach without limitation.  (Id.)

### 2. **Legal Standard.**

"When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at face value." Cross v. O'Malley, 89 F.4th 1211, 1213 (9th Cir. 2024) (internal quotation marks omitted).  Instead, "the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." Id.  For applications filed on or after March 27,

1  2017, the ALJ will not "defer or give any specific evidentiary weight to any medical
2  opinions," but instead "must explain how persuasive they find the medical opinion
3  by expressly considering the two most important factors for evaluating such
4  opinions: **supportability** and **consistency**." Id. (internal quotation marks omitted,
5  emphasis added).

An ALJ cannot reject a medical source's opinion without providing an explanation supported by substantial evidence. See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." Id. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ's articulation of persuasiveness must show the grounds actually relied upon for the final decision. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

### 3. Analysis.

The ALJ reviewed Dr. Kamzan's opinion regarding Plaintiff's visual limitations prior to August 17, 2022 and found that "the limitation to being permitted adequate time to rest during blepharospasm episodes is *not persuasive*." (Dkt. 7-3 at 26 (emphasis added).) The ALJ considered Dr. Kamzan's limitation with regard to supportability and found that the limitation was "not supported" by Dr. Kamzan's examination of Plaintiff. (Id.) With regard to consistency, the ALJ found that Dr. Kamzan's opinion was "not consistent with the medical record, which generally shows that the claimant's Botox treatments were helpful for his eye condition to stabilize." (Id.). The ALJ found that prior to August 17, 2022, the medical evidence showed "no evidence of bilateral blepharospasm or that it was controlled with Botox." (Id. at 21.). The ALJ determined that Plaintiff's bilateral blepharospasm became a severe impairment on August 17, 2022, when Plaintiff and

his clinicians believed "Botox was no longer effective for his bilateral blepharospasm." (Id.).

The Court concludes that the ALJ's findings with regard to consistency and supportability are supported by substantial evidence in the record. As the ALJ identified, the record contains multiple physical examinations that demonstrated that prior to August 17, 2022, "the [Plaintiff's] Botox treatments were helpful for his eye condition to stabilize." (Id. at 26 (citing Dkt. 7-8; Dkt. 7-9; Dkt. 7-10 at 2-187; Dkt. 7-13 at 19-182).). The ALJ identified a progress note from August 2019 that indicated Plaintiff experienced "mild" blepharospasm symptoms. (Id. at 25 (citing Dkt. 7-10 at 180).) That same note stated that Plaintiff's Botox treatments were effective in the past and Plaintiff's clinician noted the treatments were "likely still effective." (Id. (citing Dkt. 7-10 at 181).) The ALJ also identified an August 2021 progress note showing there was no evidence of the condition after receiving Botox injections once week prior. (Id. (citing Dkt. 7-9 at 80).) The ALJ further identified a November 2021 progress note showing the claimant was doing well with Botox injections with ophthalmology. (Id. (citing Dkt. 7-9 at 134).)

The ALJ is not required to take opinions at face value and must scrutinize conflicting opinions to determine the appropriate weight. See Cross, 89 F.4th at 1211. Here, the ALJ reasonably pointed to assessments from other doctors that noted Plaintiff's blepharospasm symptoms were mild and were effectively treated with Botox injections, prior to August 22, 2017. (Dkt. 7-10 at 180-81.) Thus, the Court concludes that substantial evidence supports the ALJ's finding that Dr. Kamzan's opinion was inconsistent with objective medical evidence in the record. See Woods 32 F.4th at 788.

\\
\\

# VII.
# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 26, 2025  _____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE